IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INGRID GILL-RICHARDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMY P. CAMPANELLI, in her Individual )<br>and Official capacity as COOK COUNTY )<br>PUBLIC DEFENDER; LESTER FINKLE, )<br>in his Individual and Official Capacities; )<br>AMY THOMPSON, in her Individual and )<br>Official Capacities; and KAREN DIMOND,)<br>in her Individual and Official Capacities; )<br>and COUNTY OF COOK, )<br>)<br>Defendants. ) | No. |

## COMPLAINT

NOW COMES, the Plaintiff, INGRID GILL-RICHARDS, by and through her attorneys, Anthony J. Peraica & Associates, Ltd., and complains against the Defendants, AMY P. CAMPANELLI, COOK COUNTY PUBLIC DEFENDER'S OFFICE, LESTER FINKLE, AMY THOMPSON, KAREN DIMOND, and COUNTY OF COOK, as follows:

1. This civil action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.; 42 U.S.C. §1983; 42 U.S.C. §1981; Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq.; Procedural and Substantive Due Process; and the State Claims of Retaliatory Discharge, Breach of Contract, Indemnification and Intentional Infliction of Emotional Distress.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343,

1

providing for original jurisdiction in this Court of any civil action arising under the Constitution, laws or treaties of the United States, and in any civil action authorized by law to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

3. Supplemental jurisdiction over any state claims is pursuant to 28 U.S.C. §1376.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and 29 U.S.C. §626(c).

5. The unlawful employment practices alleged below were committed in Cook County, Illinois.

## PARTIES

6. Plaintiff, Ingrid Gill-Richards, is a resident of the City of Chicago, County of Cook, State of Illinois.

7. Ms. Gill-Richards identifies as an African-Asian female over the age of 60.

8. The Cook County Public Defender is one of the largest criminal defense firms in the Country, with over 1100 employees, representing thousands of Cook County residents charged with every type of criminal offense and child protection violation.

9. Defendant Amy P. Campanelli is the Public Defender of Cook County. She was appointed pursuant to the Illinois Public Defender Act, 55 ILCS 5/3-4000 et seq.

10. The Cook County Public Defender's office is an agency of Cook County, Illinois, a municipal corporation with Home Rule Powers pursuant to the provision of Article VII, Section 6 of the Constitution of the State of Illinois.

11. Defendant Lester Finkle is the Chief of Staff of the Law Office of the Cook County Public Defender. He is being sued in his individual and official capacities.

12. Defendant Amy Thompson is the Legal Resources Division Chief of the Cook

County Public Defender's office. She was a supervisor of the Plaintiff and is being sued in her individual and official capacities.

13. Defendant Karen Dimond is the Deputy of Labor and Litigation of the Cook County Public Defender's office. She is being sued in her individual and official capacities.

14. The Public Defender and all Assistant Public Defenders, including the Plaintiff and named Defendants, are attorneys licensed to practice law in the State of Illinois.

## FACTS

15. Ingrid Gill-Richards was hired by the Cook County Public Defender's Office in May of 1991.

16. The duties of the Cook County Public Defender and Assistant Public Defenders are under the direction and supervision of the Defendant Amy P. Campanelli.

17. Defendants Finkle, Thompson and Dimond are Assistant Public Defenders of Cook County and supervisors reporting to the Defendant Campanelli as Public Defender.

18. Upon information and belief, Defendants are all Shakman-exempt employees.

19. Ms. Gill-Richards has worked in several departments of the Cook County Public Defender's Office.

20. In 2005, Ms. Gill-Richards was assigned to the Legal Resources Division.

21. In the Legal Resources Division, Ms. Gill-Richards was tasked with Post-Conviction matters and focused on wrongful conviction exonerations through collateral remedies, such as the Post-Conviction Hearing Act and appeals.

22. As a post-conviction attorney, the statute requires Ms. Gill-Richards to consider and allege attorneys and attorney supervisors of rendering ineffective assistance of counsel to their former clients if there is an arguable basis in law and fact.

23. As part of Ms. Gill-Richards' job duties, she was assigned to represent client on their quasi-civil lawsuits brought under the Post-Conviction Hearing Act.

24. If Ms. Gill-Richards' arguments are successful, prior attorneys (including attorneys who work for the Public Defender's office) may be subject to discipline by the ARDC and/or malpractice actions for willful and wanton conduct leading to wrongful convictions.

25. Ms. Gill-Richards was able to secure the exoneration of three individuals; one in each of the following years: 2004, 2013 and 2016.

26. On December 23, 2016, Ms. Gill-Richards accepted the court appointment of the Public Defender's Officer to represent Michael Cecille.

27. Mr. Cecille's *pro se* petition claimed that his Public Defender trial attorneys, Joe Gump and Kristen Arthur, violated his Sixth Amendment Right to assistance of counsel because the complaining witness was not call in his trial and he was convicted.

28. Because of the nature of Mr. Cecille's petition, Ms. Gill-Richards was placed in the position of bringing an ineffective assistance of counsel against the Public Defender herself and other Assistant Public Defenders.

29. Due to the potential conflict of interest, Ms. Gill-Richards advised the Legal Resources Division Chief Marcos Reyes of the situation.

30. On December 23, 2016, Chief Marcos Reyes told Ms. Gill-Richards to bring the potential conflict of interest to the judge's attention, ask to be removed from the case, and "when the request is denied by the judge, grin and bear it, and finish the case."

31. From December 23, 2016 to June 7, 2018, Ms. Gill-Richards regularly provided email updates on the Cecille matter to Legal Resources Division Chief Marcos Reyes, Deputy Chief Amy Thompson and her supervisor Harold Winston.

32. On March 8, 2017, Ms. Gill-Richards was the victim of sexual harassment by Legal Resources Division Chief Marcos Reyes.

33. Ms. Gill-Richards notified the Count's EEOC officer about the sexual harassment. The matter was investigated and the matter was sustained, found to be valid.

34. Upon information and belief, Legal Resources Division Chief Marcos Reyes was not removed, transferred, demotion or terminated as a result of the sexual harassment.

35. Ms. Gill-Richards filed a formal complaint with the Illinois Department of Human Rights about the sexual harassment she experienced at the hands of Marcos Reyes.

36. On November 3, 2017, Ms. Gill-Richards filed a Certificate pursuant to Illinois Supreme Court Rule 651(c) in Cecille's pending post-conviction proceedings.

37. On May 10, 2018, Ms. Gill-Richards drafted her motion to withdraw in Mr. Cecille's case. She emailed the draft to her supervisor Harold Winston, Deputy Amy Thompson, Chief of Staff Lester Finkle, and later to Public Defender Amy Campanelli.

38. The following morning, Chief of Staff Lester Finkle called Ms. Gill-Richards and told her that she should continue the case for status to allow management time to review her motion to withdraw prior to filing.

39. Mr. Cecille's case was up in Court on May 11, 2018, at which time she advised Judge Joel Greenblatt that she will be filing a motion to withdraw and its basis.

40. Ms. Gill-Richards also disclosed to Mr. Cecille, her client, the draft motion to withdraw, investigative facts and legal opinions on May 11, 2018.

41. Subsequently, Ms. Gill-Richards was directed to remove arguments and reduce the size of the motion to withdraw by her immediate supervisor, who received the directive from higher up management.

42. Ms. Gill-Richards exercised her judgment as an attorney and determined that deletion of arguments would be a forfeiture or waiver of viable legal arguments. She informed her supervisor, Harold Winston, that she could not in good conscious remove the arguments.

43. Harold Winston did not take any disciplinary action for Ms. Gill-Richards' stance and informed the upper management of Ms. Gill-Richards' position.

44. Upon information and belief, Ms. Gill-Richards' motion to withdraw was not filed.

45. On or about June 4, 2018, the Cecille case was re-assigned to Harold Winston, for drafting the motion to withdraw.

46. Winston's motion to withdraw in the Cecille case was reviewed and edited by Chief of Forensics Brendan Max and Chief of Staff Lester Finkle, prior to filing.

47. On or about June 7, 2018, Ms. Gill-Richards was formally removed from the Cecille case.

48. On June 11, 2018, Ms. Gill-Richards received Notice of Investigatory Meeting regarding her in-court statements on May 11, 2018 and her draft motion to withdraw.

49. The Public Defender's Office initiated disciplinary proceedings against Ms. Gill-Richards.

50. On November 26, 2018, Deputy Chief Amy Thompson wrote a Notice of Disciplinary Meeting regarding contemplated discipline where she alleged that Gill-Richards engaged in unprofessional and inappropriate conduct in representing Mr. Cecille.

51. On December 17, 2018, a pre-disciplinary meeting, as to Ms. Gill-Richards actions on the Cecille case, took place. Ms. Gill-Richards was accused of violating Cook County Human Resources Rule 8.03(b)(9) by allegedly "assaulted, threatened, intimidated or abused either physically or verbally" Campanelli.

52. The Cecille file was provided to Assistant Public Defender Nesbitt who came to the same conclusions as Ms. Gill-Richards about the Public Defender's office having a conflict of interest.

53. On or about January 7, 2019, Gill-Richards filed a complaint with the Independent Inspector General, the Director of Cook County Bureau of Human Rights, and the County's Compliance officer pursuant to mandatory reporting requirements disclosed in the County's annual ethics seminar and County's Fraud Ordinance.

54. On or about January 7, 2019, Gill-Richards also filed her verified complaint of sexual harassment and retaliation by Marcos Reyes and Amy Campanelli. The Illinois Human Rights Commission had issued a favorable finding, allowing her to proceed.

55. On January 25, 2019, Judge Samuel Betar allowed the Public Defender to withdraw from representing Michael Cecille on his pending claims of ineffective assistance of counsel against his trial attorneys. A private counsel was appointed for Mr. Cecille.

56. On February 4, 2019, Ms. Gill-Richard's employment with the Cook County Public Defender's Office was terminated.

57. During her almost 28 years with the Cook County Public Defender's Office, Ms. Gill-Richards has never received a negative performance evaluation.

58. While working in the Legal Resource Division of the Cook County Public Defender's office for the last 14 years, Ms. Gill-Richards is not aware of any oral or written disciplinary actions regarding her job performance.

59. Ms. Gill-Richards was not placed on any performance improvement plans.

**COUNT ONE—TITLE VII RACE DISCRIMINATION—PUBLIC DEFENDER**

60. Plaintiff restates and re-alleges paragraphs 1 through 59, as though fully set forth

herein.

61. Defendant Campanelli, in her official position of Public Defender, has discriminated against Plaintiff on the basis of her racial background, African-Asian American, in violation of Title VII by harassing, disciplining, singling her out and terminating her for pursuing her legal rights and zealously advocating on behalf of a client.

62. Plaintiff has suffered damages as a result of Defendant Campanelli's actions, including, but not limited to, loss of earnings and emotional and mental anguish.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary or hourly hours Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

d. An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

e. Attorney Fees and costs; and

f. Such other relief as the Court deems proper.

**COUNT TWO—SECTION 1983 EQUAL PROTECTION-RACE DISCRIMINATION
ALL DEFENDANTS**

63. Plaintiff restates and re-alleges paragraphs 1 through 59, as though fully set forth herein.

64. Defendant Campanelli discriminated against Plaintiff on the basis of her race, African-Asian American, by singling her out for discipline and subsequently firing Plaintiff for pursuing her legal rights and zealously advocating on behalf of a client.

65. Defendant Campanelli's discriminatory actions were taken pursuant to the Public

Defender office's custom, policy or practice.

66. Defendants Finkle, Thompson and/or Dimond acted under color of law, and their discriminatory actions were taken intentionally, maliciously and with deliberate indifference to Plaintiff's constitutionally protected rights.

67. Defendants were more concerned about protecting Amy Campanelli from a third lawsuit alleging ineffective assistance of counsel, then advocating on behalf of the client, Cecille.

68. Defendants' actions violated the Equal Protection Clause of the United States Constitution.

69. Defendants, acting under color of law of the State of Illinois, subjected Plaintiff to deprivation of the following rights, privileges, and immunities secured by the Constitution and the laws of the United States. Defendants deprived Plaintiff of her right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States by intentionally basing the Defendants' decisions as described above upon the Plaintiff's race.

70. The Defendants' adverse employment actions against Plaintiff were caused by disparate treatment sanctioned by the Defendants in their formal policies and customs and/or condoned by the Defendants in the actual policies, practices and customs followed by management in the workplace.

71. As a direct and proximate result of Defendants' actions and employment of disparate treatment in their formal policies and customs and/or condoned by Defendants in the actual policies, practices and customs followed by management in the workplace, Plaintiff was terminated from her employment, wrongfully reported to the ARDC, suffered economic loss and damage to her reputation.

72. When Defendants were informed of Plaintiff's sexual harassment charge against

Reyes, they began an overt campaign to punish the Plaintiff in retaliation for the exercise of her rights.

73. Defendants discounted the Plaintiff's work on the *Cecille* file and required review of all documents prior to filing.

74. Despite Plaintiff's supervisor and an independent review reaching the same conclusion in the *Cecille* case as the Plaintiff, the Defendants' filed an ARDC complaint against the Defendant and began termination proceedings.

75. Defendants intentionally scrutinized Plaintiff's word choices in court, on draft pleadings, and emails, and took them out of context, as a basis of discipline.

76. As a direct and proximate result of Defendants' actions, Plaintiff has suffered humiliation, damage to her reputation, economic loss, emotional distress, and pain and suffering.

77. Plaintiff has suffered damages as a result of Defendants discriminatory actions, including but not limited to, loss of earnings and emotional and mental anguish.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary, benefits, medical insurance and retirement package, Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

d. Punitive Damages against Defendants Finkle, Thompson, and/or Dimond;

e. An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

f. Attorney Fees and costs; and

g. Such other relief as the Court deems proper.

**COUNT THREE—SECTION 1981 RACE DISCRIMINATION—ALL DEFENDANTS**

78. Plaintiff restates and re-alleges paragraphs 1 through 77, as though fully set forth herein.

79. At all relevant times, Plaintiff has had a contract for employment with the Public Defender.

80. Defendants have intentionally discriminated against Plaintiff on the basis of her race, African-Asian American, by singling her out for discipline and terminating her for using her legal rights.

81. Plaintiff has suffered damages as a result of Defendant Campanelli's discriminatory actions, including but not limited to, loss of earnings and emotional and mental anguish.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary, benefits, medical insurance and retirement package, Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

d. Punitive Damages against Defendants Finkle, Thompson, and/or Dimond;

e. An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

f. Attorney Fees and costs; and

g. Such other relief as the Court deems proper.

**COUNT FOUR – AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

82. Plaintiff repeats and re-alleges paragraphs 1 through 59, as though fully set forth herein.

83. Plaintiff is over the age of 60 years old.

84. Defendant Public Defender is a qualified employer under the ADEA and is engaged in an industry affecting commerce.

85. Defendant employs 20 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

86. Plaintiff has a federally protected right to equal treatment in the workplace.

87. Defendant Campanelli, by and through her agents Lester Finkle, Amy Thompson, Karen Dimond and other Assistant Public Defenders, willfully and knowingly discriminated against the Plaintiff based upon her age in violation of the ADEA.

88. Defendant Campanelli acted with malice and reckless indifference to Plaintiff's federally protected rights.

89. As a direct and proximate result of Defendant Campanelli's unlawful conduct, Plaintiff has been deprived of employment and has suffered severe financial damages, including but not limited to loss of pay, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment, damage to reputation, other compensatory damages, attorneys' fees, costs and other damages allowable under the ADEA.

90. Defendant, through its agents and/or employees, was willful, wanton, malicious and oppressive and justify the awarding of exemplary, liquidated and/or punitive damages.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary, benefits, medical insurance and retirement package, Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

    d.   Punitive Damages;

    e.   An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

    f.   Attorney Fees and costs; and

    g.   Such other relief as the Court deems proper.

### COUNT FIVE—RETALIATION--DEFENDANT CAMPANELLI

91. Plaintiff repeats and re-alleges paragraphs 1 through 59, as though fully set forth Herein.

92. When informed that the Plaintiff intended to and file a sexual harassment complaint and complaints of Shakman violations, Defendant Campanelli, individually, or by and through her agents, Lester Finkle, Amy Thompson, Karen Dimond or others at the Public Defender's Office, began an overt campaign to punish the Plaintiff in retaliation for the exercise of her rights.

93. The Defendant retaliated by scrutinizing and controlling the actions of the Plaintiff on the *Cecille* file, requiring oversight, review and editing by management prior to Plaintiff filing documents with the court.

94. The Defendant also retaliated by filing an ARDC complaint against the Plaintiff, in an attempt to punish and humiliate the Plaintiff and damage her reputation.

95. The Defendant further retaliated against the Plaintiff by combing through documents and emails for anything on which to basis Plaintiff's termination.

96. Defendants knew or had reason to know that the actions engaged in by the Plaintiff were permissible under Illinois Rules of Professional Conduct and had a basis in law and fact.

97. As a direct and proximate result of Defendant's actions, Plaintiff has suffered

humiliation, damage to her reputation, economic loss, and emotional distress and pain and suffering.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary, benefits, medical insurance and retirement package, Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

d. An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

e. Attorney Fees and costs; and

f. Such other relief as the Court deems proper.

### COUNT SIX--VIOLATION OF PLAINTIFF'S PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS—ALL DEFENDANTS

98. Plaintiff incorporates and re-alleges paragraphs 1 through 59. as if fully set forth herein.

99. This action is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §1981, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment of the United States Constitution for violation of Plaintiff's procedural and substantive due process rights and the violation thereof resulting from the termination of Plaintiff's employment.

100. Plaintiff's employment with Defendants was terminated based upon alleged misconduct without progressive discipline afforded to other employees of Defendant.

101. Defendants acted unlawfully when they terminated Plaintiff's employment without first applying progressive discipline.

102. As the actual and proximate result of the acts of the Defendants as described

herein, Plaintiff was wrongfully terminated and forced to endure humiliation, severe emotional distress, and damage to her reputation.

103. By reason of the conduct of the Defendants, Plaintiff was deprived of rights, privileges, and immunities secured to her by the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, the Defendants are liable to Plaintiff pursuant to 42 U.S.C. §1983 and is entitled to all remedies available to her under 42 U.S.C. §1981.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary, benefits, medical insurance and retirement package, Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

d. An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

e. Attorney Fees and costs; and

f. Such other relief as the Court deems proper.

**COUNT SEVEN—RETALIATORY DISCHARGE—DEFENDANT CAMPANELLI**

104. Plaintiff restates and re-alleges paragraphs 1 through 59, as though fully set forth herein.

105. Defendant Campanelli retaliated against Plaintiff for filing complaints with the appropriate authorities regarding discriminatory actions and Shakman violations.

106. Plaintiff has suffered damages as a result of Defendant Campanelli's

discriminatory actions, including but not limited to, loss of earnings and emotional and mental anguish.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary, benefits, medical insurance and retirement package, Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

d. An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

e. Attorney Fees and costs; and

f. Such other relief as the Court deems proper.

**COUNT EIGHT—BREACH OF CONTRACT--DISCRIMINATION RACE, AGE AND RETALIATION—DEFENDANT CAMPANELLI**

107. Plaintiff re-alleges paragraph 1 through 106 of her complaint as if stated herein.

108. A valid and enforceable contract existed between Plaintiff and the Public Defender's Office, consisting of the Cook County Public Defender's catalogs, manuals, handbooks, policy statements, brochures and Collective Bargaining Agreement.

109. The language in the employee handbook contained clear promises to the employees, including the Plaintiff, as to how they would be treated by the administration.

110. All employees, including the Plaintiff, received the employee handbook upon commencement of their employment.

111. Based on the policy statements and promises in the employee handbooks, Plaintiff reasonably believed that Public Defender administrators had offered to abide by its terms.

112. The Plaintiff accepted the offer by commencing employment or continuing

employment at the Public Defender's Office, after learning of the policy statements and promises.

113. The Plaintiff's continued employment at the Cook County Public Defender's Office constituted consideration for the policy statements and promises contained in the employee handbooks, and a valid contract was formed.

114. The contract includes the Cook County Public Defender's employee handbook which prohibits discrimination at the Public Defender's Office.

115. Plaintiff performed her obligations under the terms of the contract with Defendant Campanelli.

116. Defendant Campanelli breached the contract, inter alia, as follows:

   a. By discriminating against Plaintiff on the basis of her race;

   b. By discriminating against Plaintiff on the basis of her age;

   c. By discriminating against Plaintiff for filing a sexual harassment complaint;

   d. By discriminating against Plaintiff for filing Shakman violations; and

   e. By failing to provide her with progressive discipline prior to termination.

117. Plaintiff has suffered damages as a direct and proximate result of Defendant Campanelli's breach of the contract.

118. Defendant's breach of the contract was undertaken willfully, with malice, wantonness and oppression, and entitling Plaintiff to damages for emotional pain and suffering.

WHEREFORE, Plaintiff requests the following relief:

a. Back pay, including, but not limited to, all loss of salary, benefits, medical insurance and retirement package, Plaintiff has suffered as a result of her discriminatory firing;

b. Front pay;

c. Compensatory damages;

    d. An injunction directing the Public Defender to place Plaintiff back in her position as an Assistant Public Defender or equivalent position, with opportunities for promotion and career advancement similar to those available to Plaintiff prior to her discriminatory termination;

    e. Attorney Fees and costs; and

    f. Such other relief as the Court deems proper.

### COUNT NINE—INDEMNIFICATION—COUNTY OF COOK

119. Plaintiff restates and re-alleges paragraphs 1 through 118, above as if fully set forth herein.

120. Defendant County of Cook is the employer of all of the Defendants.

121. The Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the County of Cook.

WHEREFORE, Plaintiff demands that if any non-punitive damages, fees or costs are awarded against the Defendants, then the County of Cook should be liable to pay the award.

### COUNT TEN—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS— DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

122. Plaintiff restates and re-alleges paragraphs 1 through 118, above as if fully set forth herein.

123. The above-detailed conduct by the individual Defendants was extreme and outrageous.

124. Defendants performed the acts detailed above with the intent of inflicting severe emotional distress on Plaintiff with knowledge of the high probability that the conduct would cause such distress.

125. As a direct and proximate result of this conduct, Plaintiff did in fact suffer severe emotional distress.

WHEREFORE, Plaintiff demands substantial compensatory damages and liquidated damages in an amount sufficient to deter similar misconduct, jointly and severally from the Defendants, plus costs, attorney's fees and whatever additional relief this Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

                                                                Respectfully Submitted,

                                                                Ingrid Gill-Richards

                                                                By: <u>s/ Anthony J. Peraica</u>

Anthony J. Peraica, ARDC #6186661
Anthony J. Peraica & Associates, Ltd.
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
PeraicaLaw@aol.com