IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INGRID GILL-RICHARDS, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> AMY P. CAMPANELLI, in her ) </br> individual and official capacity as ) </br> COOK COUNTY PUBLIC ) </br> DEFENDER; LESTER FINKLE, in his ) </br> individual and official capacities; AMY ) </br> THOMPSON, in her individual and ) </br> official capacities; and KAREN ) </br> DIMOND, in her individual and official ) </br> Capacities; and COUNTY OF COOK, ) </br> ) </br> Defendants. ) | No. 20 C 00822 </br></br> Judge John J. Tharp, Jr. |

**ORDER**

For the reasons set forth in the Statement below, the defendants' motion to dismiss [26] is granted in part and denied in part. All discovery scheduling and supervision are referred to the assigned Magistrate Judge, who shall also have authority to conduct any settlement conference the parties may seek.

**STATEMENT**

From May 1991 until February 2019, Ingrid Gill-Richards worked as an Assistant Public Defender in the Cook County Public Defender's Office ("the Office").[1] In 2005, she was assigned to the Legal Resources Division; her work there consisted of post-conviction matters. While working for that Division, she alleged that the Division Chief, Marcos Reyes, sexually harassed her. She complained to the Cook County Equal Employment Opportunity Office and filed charges of sexual harassment, hostile work environment, and retaliation against the Office and Reyes with the Illinois Department of Human Rights ("IDHR") and Equal Employment Opportunity Commission ("EEOC").[2] She also filed grievances with her union.

---

[1] The Public Defender's Office is an agency of Cook County; it is not itself a suable entity. *Gallagher v. Dursun*, No. 14 C 3803, 2015 WL 1051445, at *2 (N.D. Ill. Mar. 6, 2015).

[2] The defendant attached Gill-Richards' discrimination charges and the relevant portions of the Law Office of the Cook County Public Defender Employee Manual as exhibits to its motion to dismiss and reply. These exhibits do not turn this motion to dismiss into a motion for summary

According to Gill-Richards, after she filed her complaints and during the adjudication process, the defendants began searching for reasons to terminate her employment. She alleges that the Public Defender, Amy Campanelli, scoured Gill-Richards' documents and emails to find a reason to fire her and required additional review of Gill-Richards' work. While working on a post-conviction matter (the *Cecille* matter), Gill-Richards notified her supervisors of a conflict and that she planned to file a motion with the court to withdraw as counsel. She believed that she had a conflict because her client wanted to bring claims of ineffective assistance of counsel based on the conduct of his trial attorneys, who were also Assistant Public Defenders in the Office. On May 10, 2018, she sent a draft of her motion to her supervisor, Deputy Amy Thompson, and Chief of Staff Lester Finkle. She sent the draft to Campanelli separately. Finkle told Gill-Richards to ask the judge to continue the case for status so that the Office's management could review her motion. On May 11, 2018, however, Gill-Richards informed the judge that she would be filing a motion to withdraw due to the conflict. She also showed her client the draft motion. Her supervisor informed her that management had directed her to omit arguments, and Gill-Richards informed her supervisor that she disagreed with management's position.

About a month later, the Office removed Gill-Richards from the case and sent her a Notice of Investigatory Meeting. Thompson and Deputy of Labor Litigation Karen Dimond "interrogated" Gill-Richards about her work in July 2018. First Am. Compl. ¶ 54, ECF No. 23. The Office held a pre-disciplinary meeting on December 17, 2018, and Gill-Richards was alleged to have "assaulted, threatened, intimidated or abused either physically or verbally" Campanelli. *Id.* at ¶ 60 (quoting Cook County Human Resources Rule 8.03(b)(9)). Thompson recommended terminating Gill-Richards in a memorandum on January 3, 2019. The Office terminated Gill-Richards on February 4, 2019. Gill-Richards also alleges that Campanelli reported her to the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC"). She filed another charge of discrimination on October 22, 2019, based on her allegations of retaliation. She brought this federal lawsuit against Cook County and against Campanelli, Finkle, Thompson, and Dimond in both their individual and official capacities. The defendants filed the instant motion to dismiss in response to Gill-Richards' first amended complaint.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court assumes that all well-pleaded facts are true and draws any reasonable inferences in the light most favorable to the plaintiff. *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1038 (7th Cir. 2021). Under Rule 12(b)(6), the Court asks whether the plaintiff has plead a plausible claim for relief. "[A] claim is 'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *Florek v. Vill. of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943)). A "count" is not a claim *per se*, but rather the articulation of a legal theory on which a claim may be premised. There may be more than one legal theory advanced in support of a single claim: "One claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012). So long as there is an identifiable legal theory that plausibly provides a legal remedy for a claim, a motion to dismiss that claim, or other theories advanced in support of the claim, must be denied. Rule 12(b)(6) permits this Court to dismiss claims, not legal theories or counts. *BBL, Inc.*

---

judgment; all of the exhibits are "referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

*v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") (emphasis in original).

These principles streamline the Court's task in addressing the defendants' motion to dismiss. Although the complaint includes ten "counts," the Court reads the complaint to assert seven claims against the defendants: (1) a race and age discrimination claim against all defendants;[3] (2) a claim of retaliation for her sexual-harassment claims against Campanelli; (3) a claim of retaliation for following the Illinois Rules of Professional Conduct against Campanelli; (4) a claim of retaliation for filing complaints regarding violations of consent decrees entered in *Shakman v. Democratic Organization of Cook County*, No. 69 C 2145 (N.D. Ill.), against Cook County;[4] (5) a breach of contract claim against Cook County; (6) an indemnification claim against Cook County, and (7) an intentional infliction of emotional distress claim against Campanelli, Finkle, Thompson, and Dimond. The defendants' challenge to the complaint will be assessed in the context of these claims, rather than on a count-by-count basis.

### A. Discrimination Claim

Gill-Richards offers a variety of legal theories to support her discrimination claim, but it will suffice to deny the motion to dismiss that claim to address only her section 1983 theory. It is enough to plead a plausible claim of discrimination under section 1983 for the plaintiff "to assert that she was treated worse because of protected characteristics." *Graham v. Bd. of Ed.*, 8 F.4th 625, 627 (7th Cir. 2021) (claim of discrimination on account of race and sex). Section 1983 shares this minimal pleading standard in common with other antidiscrimination statutes. *Id.*; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084-86 (7th Cir. 2008) (applying "the minimal pleading standard" for employment discrimination claims to a claim under section 1983).[5] A complaint in which the plaintiff "identifies the type of discrimination that she thinks occurs [ ], by whom . . ., and when" contains all that is needed to allow a discrimination claim to go forward. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)).

Gill-Richards alleges the who, what, and when necessary to state a discrimination claim against the defendants in their individual capacities under section 1983. She alleges that

---

[3] This could be characterized as two distinct discrimination claims, but since the same conduct serves as the basis for the alleged discrimination on account of race and age, the Court can further simplify by treating discrimination as a single claim.

[4] *See* Am. Compl. ¶¶ 126, 142. The defendants' motion to dismiss did not address this fourth claim. As a result, this Court does not address whether that claim would or would not survive a motion to dismiss.

[5] Although public defenders are not "state actors" within the meaning of section 1983 when representing criminal defendants, they are deemed to act under color of law when making hiring and firing decisions. *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981). Presumably for this reason, the defendants do not argue that they cannot be held liable under section 1983 because they are not state actors within section 1983's ambit.

Campanelli and the named Assistant Public Defenders discriminated against her. She alleges that Campanelli, Finkle, Johnson, and Dimond discriminated against her based on her race and age. The defendants maintain that "Plaintiff provides no specific facts as to what actions Defendants took individually to deprive Plaintiff of her constitutional rights," Defs.' Mot. to Dismiss First Am. Compl. 8, ECF No. 26, but that is not so. Gill-Richards alleges that each of the attorney defendants personally participated in the discriminatory conduct that culminated in her termination: scrutinizing her work on the post-conviction matter, conducting unwarranted internal investigations and disciplinary proceedings, removing her from the case, filing the ARDC complaint against her, and firing her in February 2019. She alleges that Campanelli "comb[ed] through documents and emails for anything on which to basis [sic] Plaintiff's termination." Am. Compl. ¶ 129. Gill-Richards alleges that Finkle told Gill-Richards to seek a continuance because management wanted to review her motion and that Finkle and Campanelli fired her. She alleges that Thompson issued the Notice of Disciplinary meeting and wrote a memorandum recommending Gill-Richards' termination. At the disciplinary meeting, according to Gill-Richards' allegations, Thompson and Dimond "interrogated" her about her work on the *Cecille* matter. *Id.* at ¶ 54. For each defendant in their individual capacity, then, Gill-Richards adequately pleads a plausible claim for relief.

As for Gill-Richards' claims against the county employees in their official capacities and Cook County, section 1983 also provides a theory under which she states a plausible claim. The rules for municipal liability under section 1983 derive from *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The same rules govern suits against county and municipal employees in their official capacities; a suit against an individual in their official capacity "is essentially another way of suing the county." *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014) (citing *Monell*, 436 U.S. at 690 n. 55). There is, then, no need to distinguish among the individual defendants and the County on this score; the official capacity claims are entirely redundant of the claim against Cook County. And as for the County, it cannot be held liable under section 1983 for the conduct of its agents. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). Instead, claims against the County require the showing of "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Est. of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)).

Although the complaint makes conclusory allegations that the Public Defender's Office had an express and/or widespread practice of discriminating on the basis of age and race, it falls short of adequately stating a plausible claim against the County on those bases. Gill-Richards does, however, allege that Campanelli, as the Public Defender, had authority to set final policy as to the business of the Office. While the plaintiff does state that Campanelli acted "individually, or by and through her agents," Am. Compl. ¶ 126, she mitigates that ambiguity by also alleging that Campanelli personally acted, alleging that she "comb[ed] through documents and emails for anything on which to basis [sic] Plaintiff's termination." *Id.* at ¶ 129. Reading the complaint in the light most favorable to Gill-Richards, that allegation also suffices to allege Campanelli's personal participation in Gill-Richards' termination and the discrimination against her. As Campanelli was the final policymaking authority at the time, Gill-Richards' complaint adequately states a *Monell* claim against the County. *Kozlowski v. Fry*, 238 F. Supp. 2d 996, 1017-18 (N.D. Ill. 2002) (jury

4

could reasonably find that the Cook County Public Defender is an official with final policymaking authority and her employment decisions therefore subjected the County to liability under section 1983). The defendants do not address this point in their reply.

The defendants assert myriad arguments against other theories of liability that the complaint asserts expressly but the evaluation of those arguments properly awaits summary judgment or pretrial motions after the plaintiff has been required, in discovery, to identify and support her legal theories. The defendants argue, for example, that Gill-Richards did not exhaust her administrative remedies as required under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623. Mot. to Dismiss 4-6. Section 1983 includes no exhaustion requirement, however, so even were it clear on the face of the complaint that Gill-Richards did not exhaust her discrimination claims administratively, that would not require dismissal of her discrimination claim because that claim is nevertheless supported by a cognizable legal theory that does not require exhaustion—namely, section 1983. Accordingly, this Court need not address the viability of Gill-Richards' discrimination claim under the other theories she has identified (42 U.S.C. § 1981, Title VII, the ADEA, state contract law, or the Due Process Clause of the Fourteenth Amendment), much less assess the viability of potential affirmative defenses to liability under those theories. Even if all of those alternative theories are infirm, as the defendants maintain, the complaint nevertheless states a plausible claim for discrimination under section 1983 against each of the defendants.

The individual defendants also contend that they are entitled to qualified immunity from Gill-Richards' section 1983 claims. "Officials are sheltered from suit, under a doctrine known as qualified immunity, when their conduct 'does not violate clearly established … constitutional rights' a reasonable official, similarly situated, would have comprehended." *Wood v. Moss*, 572 U.S. 744, 748 (2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When evaluating a qualified immunity defense, courts ask whether "(1) [the officials] violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle*, 566 U.S. at 664). In determining whether the law is "clearly established," the Court looks first at binding Supreme Court precedent and then to Seventh Circuit precedent. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018).

The defendants argue that the individual defendants could not have been aware that their "routine actions" could violate Gill-Richards' constitutional rights. Mot. to Dismiss 10. This argument fails for two reasons. First, the question is not whether the individual officers were on notice that their actions violated their employee's constitutional rights; instead, "[t]he question is whether *the wrongfulness of the defendant's conduct* was clearly established." *Taylor v. Ways*, 999 F.3d 478, 491 (7th Cir. 2021) (emphasis in original). Second, it was clearly established that an officer's employment actions (routine or not) could violate public employees' constitutional rights. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 597 (2008) ("It is equally well settled that States do not escape the strictures of the Equal Protection Clause in their role as employers.") (collecting cases). Given the notice pleading standards, especially the minimal standard for discrimination claims, defendants' qualified immunity defense is premature. At the motion to dismiss stage, dismissal "is appropriate based on qualified immunity only when the plaintiffs' well-pleaded

5

allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). The Seventh Circuit has held the motion to dismiss is rarely "(if ever) the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim." *Hanson*, 967 F.3d at 589. Thus, the Court finds that it would be inappropriate to dismiss this claim based on qualified immunity at this juncture.

### B. Retaliation for Sexual Harassment Complaint

"Under the Title VII framework [for retaliation], a plaintiff must plausibly allege three elements: a statutorily protected activity, a materially adverse employment action, and a causal connection between the two." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021). In her complaint, Gill-Richards alleges that she filed sexual-harassment complaints with the EEOC and IDHR. She alleges that, in retaliation, Campanelli scrutinized her documents and emails, required additional review of her work, filed an ARDC complaint against her, and ultimately terminated her employment. Title VII therefore plausibly supports Gill-Richards' claims against her former employer, the County, though not Campanelli individually. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) ("[A] supervisor does not, in his individual capacity, fall within Title VII's definition of employer[.]").

The defendants again assert that Gill-Richards failed to exhaust as to her retaliation claim under Title VII, but their assertion of that affirmative defense is premature in a motion to dismiss under Rule 12(b)(6).[6] Failure to exhaust is an affirmative defense and a complaint need not anticipate and negate affirmative defenses in order to state a plausible claim for relief. *Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014); *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). Dismissal of a failure-to-exhaust defense on Rule 12(b)(6) motion is appropriate only where "there is no way that any amendment could salvage the claim." *Mosely*, 434 F.3d at 533. That is not the case here, where the defendants' failure-to-exhaust argument is premised on the absence of allegations in the complaint establishing that the plaintiff received a right-to-sue letter regarding her retaliation claim. *See* Mot. to Dismiss 5-6.

Gill-Richards' allegations against the other defendants in their individual capacities, however, fail to state claims for relief based on retaliation. As a threshold matter, the complaint does not allege that the individual defendants knew of the sexual harassment charge she filed. That defect may be easily cured; more difficult to overcome is that claims for retaliation based on filing charges of discrimination can be sustained under section 1983 "[o]nly when the underlying facts support both a Title VII and a constitutional deprivation claim." *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989). Gill-Richards' right to be free from retaliation for protesting discrimination derives

---

[6] The defendants also argue that, to the extent that the plaintiff relies on state law as her legal theory for this claim, her claim of retaliation for the sexual harassment complaint is barred by the one-year statute of limitations. 745 ILCS 10/8-101(a). The Court does not address this statute of limitations argument because it does not reach that legal theory at this stage. Nothing in this order bars the defendants from raising this argument at summary judgment.

from Title VII, not the Constitution,[7] *id.*, and therefore provides no support for retaliation claims against the individual defendants premised on section 1983. Accordingly, the sexual harassment retaliation claims against the individual defendants are dismissed.

### C. Retaliatory Discharge[8]

Gill-Richards' complaint also fails to state a claim for retaliatory discharge. The defendants move to dismiss two retaliatory discharge claims: one based on her discrimination complaints and one based on her advocacy and the Illinois Rules of Professional Conduct. Defendants contend that the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, preempts Gill-Richards' claim of retaliatory discharge based on her discrimination complaints and charges. The IHRA says that, "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). The Supreme Court of Illinois has interpreted this language to mean that the IHRA preempts common law torts claims seeking relief for civil rights violations. *Geise v. Phoenix Co. of Chi., Inc.*, 159 Ill. 2d 507, 515-16, 639 N.E.2d 1273, 1276 (1994).

To avoid preemption, the common law claim must be independent and not inextricably linked to a civil rights violation. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997). The test is whether "if we were [to] take the civil-rights allegations out of the complaint, no [common law tort claim] would remain." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (citing *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, 992 N.E.2d 509, 518-19). The plaintiff must allege "a basis for imposing liability on defendants independent of the Act, *i.e.*, without reference to the legal duties created by the Act." *Blount v. Stroud*, 232 Ill. 2d 302, 315, 904 N.E.2d 1, 9 (2009). Gill-Richards' claim of retaliatory discharge based on her discrimination complaints is clearly preempted; it is based on retaliation for making civil rights complaints and cannot stand without those allegations. Her claim of retaliatory discharge based on discrimination complaints must therefore be dismissed.

Gill-Richards alleges that the Public Defender's Office fired her because of her disclosures to the judge and her client, her work on the draft of her motion to withdraw, and her commitment to following the Rules of Professional Conduct. The defendants contend that Illinois law only recognizes retaliatory discharge in limited circumstances. Under Illinois law, retaliatory discharge is "a limited and narrow exception to the general rule that employees are at-will." *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 22, 135 N.E.3d 891, 896. In federal court, an employee must plausibly allege that "(1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly

---

[7] Gill-Richards does not argue that her retaliation claim based on reporting alleged sexual harassment can survive under a First Amendment retaliation theory and alleges no facts that plausibly suggest that in reporting the alleged harassment, she was speaking on a matter of public, rather than private, concern. *See, e.g., Gray*, 885 F.2d at 411 (complaint to supervisors about sexual harassment with objective of stopping the harassment was speech on matter of private concern and did not give rise to liability under section 1983 for First Amendment retaliation).

[8] Again, the Court does not address the claim for retaliatory discharge based on filing *Shakman* complaints.

mandated public policy." *Id.* at ¶ 23; *see also O'Regan v. Arb. Fs., Inc.*, 121 F.3d 1060, 1063 (7th Cir. 1997).

That clearly mandated public policy cannot be the Rules of Professional Conduct. The Illinois Supreme Court has held that "[a]n attorney's obligation to follow these Rules of Professional Conduct should not be the foundation for a claim of retaliatory discharge." *Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 378, 706 N.E.2d 491, 493 (1998) (quoting *Balla v. Gambro, Inc.*, 145 Ill. 2d 492, 505, 584 N.E.2d 104, 110 (1991)). Since Gill-Richards invokes the Rules of Professional Conduct as the sole public policy violated by her discharge (regarding retaliation for her advocacy), she has not plausibly alleged a claim for retaliatory discharge.

### D. Breach of Contract

Gill-Richards does not state a claim for breach of contract. Under Illinois law, "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (1987). Those requirements include an offer to contract—something that Gill-Richards' allegations fail to plausibly establish. Gill-Richards' allegations that the employee handbook provided by the Office constituted an offer to contract is plainly insufficient. Employee handbooks or policy statements that contain explicit disclaimers stating that the document does not create a contract and may be unilaterally changed are not offers to enter or modify an enforceable contract. *Anders v. Mobil Chem. Co.*, 201 Ill. App. 3d 1088, 1095, 559 N.E.2d 1119, 1122-23 (4th Dist. 1990) (collecting cases); *see also Bradley v. Wolf Retail Sols. I, Inc.*, 443 F. Supp. 3d 959, 962 (N.D. Ill. 2019) ("It is axiomatic that a document stating that it is not a contract and that it creates no contractual obligations of any kind is not a contract that creates a contractual obligation to engage in arbitration.") (citing *Workman v. UPS, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000)). The handbook states "**THIS MANUAL IS NOT A CONTRACT. THE INFORMATION IS SUBJECT TO CHANGE AT ANY TIME**. … The Law Office reserves the right to revise policies. Any such revised policies issued by the Law Office will be effective from the date of issue." Mot. to Dismiss, Ex. C at 1, ECF No. 26-3 (emphasis in original). Given the handbook's clear disclaimers, an employee could not reasonably believe that the handbook constituted an offer. Thus, the handbook did not give Gill-Richards enforceable contractual rights, and her breach of contract claim must be dismissed.

### E. Intentional Infliction of Emotional Distress

Under Illinois law, the tort of intentional infliction of emotional distress has three elements:

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.

*Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 50, 77 N.E.3d 50, 63. The bar for proving intentional infliction of emotional distress is particularly high. Illinois courts only find the first requirement satisfied where "where the conduct has been so outrageous in character, and so

8

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at ¶ 51 (quoting Restatement (Second) of Torts § 46 cmt. d, at 73 (Am. L. Inst. 1965)).

Whether conduct is "truly extreme and outrageous" is an objective inquiry and depends on the facts. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 67 ("There is no bright-line rule about what satisfies the extreme and outrageous conduct; it is judged by an objective standard, based on all the facts and circumstances of an individual case."). Illinois courts have identified several factors that should be considered when determining whether alleged conduct is truly extreme and outrageous, including the defendant's abuse of authority, supervision, or power over the plaintiff. *Schweihs*, 2016 IL 120041, ¶ 52.

### 1. Preemption by the Illinois Human Rights Act

Defendants contend that the IHRA also preempts Gill-Richards' claim of intentional infliction of emotional distress. As the Court previously detailed in Section C, the IHRA preempts any common law claims that are inextricably linked with her civil rights claims. Thus, to decide whether the IHRA preempts her intentional infliction of emotional distress claim, the Court must determine whether that conduct is inextricably linked to her civil rights claims. The one-year statute of limitations for civil actions against local government entities or employees applies to this claim. 745 ILCS 10/8-101(a). Gill-Richards filed this lawsuit on February 4, 2020, and the Office terminated her employment on February 4, 2019. Prior conduct may well inform whether her termination was truly extreme and outrageous, but that conduct cannot be considered as independent bases for her claim.

The defendants contend that Gill-Richards seeks relief from her alleged injuries caused by discrimination and retaliation for filing sexual harassment complaints. Gill-Richards argues that her complaint also alleges that she was fired in retaliation for her advocacy in the *Cecille* matter and for disclosing potential malpractice by other Assistant Public Defenders. While the civil rights claims and the intentional infliction of emotional distress claims both rely on the termination, Gill-Richards' intentional infliction of emotional distress claim based on firing her for her advocacy depends on different allegations. Her discrimination and retaliation theories allege that the disciplinary actions and termination were caused by her race, age, and sexual harassment complaints; her complaint also alleges that the Office fired her for uncovering and disclosing alleged misconduct by other Assistant Public Defenders. And at this stage of litigation, it would be premature to determine which theory of the case—if any—will find support in discovery.

### 2. Truly Extreme and Outrageous Conduct

The defendants also contend that Gill-Richards has failed to allege facts that establish truly extreme and outrageous conduct. In her complaint, Gill-Richards alleges that she was fired in retaliation for uncovering potential misconduct by Assistant Public Defenders and disclosing that discovery to the state court judge. Before her termination, Gill-Richards alleges that Finkle directed her to seek a continuance rather than move to withdraw and disclose the potential malpractice to the state judge. After she still disclosed the basis of her motion to the judge, Campanelli scoured her emails and documents to find ways to fire her, Thompson and Dimond interrogated her, and she faced disciplinary hearings and ultimate termination. She also alleges

that Campanelli filed an ARDC complaint against her, but she does not allege the timing in her complaint.

None of those allegations, except for her termination and possibly the ARDC complaint, fall within the statute of limitations; the other conduct does, however, support the plausibility of her allegation that her termination was truly extreme and outrageous. It is plausible that the defendants used their positions of power over Gill-Richards to punish her for exposing potential misconduct and to cover up the malpractice allegations in the *Cecille* matter. This is a fact-intensive inquiry, and, in the absence of discovery, the Court is required to view the complaint in the light most favorable to Gill-Richards. On that basis, the Court concludes that Gill-Richards has plausibly alleged that her termination constitutes truly extreme and outrageous conduct.

To sum up: The defendants' motion to dismiss is granted as to the sexual harassment retaliation claims against the individual defendants, to the retaliatory discharge claims based on her complaints of discrimination and violations of the Rules of Professional Conduct, and to her breach of contract claim. These dismissals are without prejudice. The motion is otherwise denied.

Dated: January 7, 2022

John J. Tharp, Jr.
United States District Judge